**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK E. WOOLLEY,** | : | |
| **Plaintiff** | : | **No. 1:20-cv-01887** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **MICHAEL GROFT,** | : | |
| **Defendant** | : | |

<u>**MEMORANDUM**</u>

Before the Court is Defendant Michael Groft ("Defendant")'s motion to dismiss (Doc.
No. 9) various claims set forth in Plaintiff Mark E. Woolley ("Plaintiff")'s complaint (Doc. No.
1) for failure to state a claim for which relief may be granted pursuant to Federal Rule of Civil
Procedure 12(b)(6).  For the reasons that follow, Defendant's motion will be granted.

I.     **BACKGROUND**

    A.     **Procedural Background**

Plaintiff initiated the above-captioned action on October 13, 2020, by filing a complaint
in this Court asserting various claims against Defendant for breach of contract (Counts I-II),
fraud (III), and unjust enrichment (Count IV).  (Doc. No. 1.)  Plaintiff also seeks declaratory
relief with respect to the alleged contracts at issue in this action (Counts V-VI).  (<u>Id.</u>)  The next
day, Plaintiff's counsel sent a copy of the complaint and a waiver of service form pursuant to
Federal Rule of Civil Procedure 4(d) to Defendant's counsel (Doc. No. 5 ¶ 7), which Defendant's
counsel returned on October 16, 2020 (Doc. No. 8 ¶ 7).  Notwithstanding that Plaintiff requested
that Defendant waive service, Plaintiff filed a motion for entry of default on November 9, 2020.
(Doc. No. 5.)  Defendant's counsel entered an appearance on November 13, 2020, and filed an
affidavit in opposition to Plaintiff's motion for entry of default (Doc. No. 8), as well as the
instant motion to dismiss (Doc. No. 9), in which Defendant asserts that several of Plaintiff's

claims (Counts I, III, IV, and V) are barred by the applicable statute of limitations.  The Court denied Plaintiff's motion on November 16, 2020 (Doc. No. 12), after which the parties proceeded to brief Defendant's motion to dismiss (Doc. Nos. 13, 16, 17).  Having been fully briefed, Defendant's motion (Doc. No. 9) is ripe for disposition.

### B.      Factual Background[1]

Plaintiff is the Secretary of MGM Enterprises, Inc. ("MGM"), a company that invests in and manages real estate properties throughout central Pennsylvania.  (Doc. No. 1 ¶ 5.)  In early 2008, Plaintiff decided to hire Defendant as MGM's Chief Financial Officer ("CFO"), which culminated in the execution of an employment agreement on February 19, 2008.  (Id. ¶¶ 7-8.)  Shortly thereafter, Defendant was promoted to President of MGM and given a seat on MGM's Board of Directors.  (Id. ¶ 10.)  Under the terms of Defendant's employment agreement, any future acquisitions of MGM would be purchased by a limited partnership in which Defendant would be given an interest without having to provide capital at the time of purchase.  (Id. ¶¶ 12, 14-15.)  Pursuant to this structure, Plaintiff or a fellow shareholder would pay Defendant's share of the purchase price of any new acquisition, and then demand notes would be executed setting forth Defendant's obligation to repay his interest in the acquisition using proceeds obtained during the refinance or sale of the property.  (Id. ¶¶ 14-17.)  Between 2008 and 2013, fourteen (14) demand notes were executed under the terms of the employment agreement, all of which stated that Defendant would pay Plaintiff the purchase price "on demand."[2]  (Id. ¶¶ 19-21.)

---

[1] The following factual background is taken from the allegations of Plaintiff's complaint.  (Doc. No. 1.)

[2] Thirteen (13) of the demand notes were executed between 2008 and 2009.  (Doc. No. 1-3.)  The final demand note, executed on March 13, 2013, is part of the KGLA Agreement that is the subject of claims in Plaintiff's complaint separate from the other demand notes.  (Doc. No. 1-5.)

Plaintiff alleges that the demand notes reflect the parties' intention that Defendant would not receive any proceeds from the refinancing of new properties until he first "repaid the shareholder(s) for the cost of the five percent (5%) interest that was provided to him."  (Id. ¶ 22.) According to Plaintiff, "[i]n violation of the Demand Notes, [Defendant] took proceeds from the sale and/or refinancing of the aforementioned properties prior to the Demand Notes being satisfied."  (Id. ¶ 27) (emphasis in original).  Plaintiff further alleges that Defendant "took these proceeds without ever satisfying the Demand Notes," which remain unpaid.  (Id.) (emphasis in original).  Plaintiff avers that Defendant "fraudulently misrepresent[ed] to Plaintiff that the Demand Note was satisfied while secretly pocketing the refinancing proceeds for his personal benefit" and "fraudulently covered his steps and created false documentation to conceal his improper gains."  (Id. ¶¶ 28, 50.)  In addition to having allegedly violated the 2008 and 2009 demand notes, Defendant allegedly breached the "KGLA Agreement," executed March 13, 2013, which similarly provided that Defendant would not receive proceeds from the refinancing or sale of the property until he had repaid Plaintiff his portion of the purchase price.[3]  (Id. ¶¶ 51-54.)

In 2017, Defendant voluntarily left his employment with MGM in order to start a new company, Property Management Enterprise.  (Id. ¶ 55.)  On or about August 27, 2020, Plaintiff formally demanded payment from Defendant on all of the demand notes.  (Id. ¶ 58.)  When Defendant asserted that he did not owe payments and that Plaintiff's claims were untimely, Plaintiff initiated the above-captioned action.  (Id. ¶ 59.)

---

[3] Claims related to the alleged nonpayment of obligations under the KGLA Agreement (Counts II and VI) are not the subject of the instant motion to dismiss.  (Doc. No. 13 at 5 n.2.)

3

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Rule 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court need not accept legal conclusions set forth as factual allegations.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Consistent with the Supreme Court's ruling in Twombly and Ibqal, the United States Court of Appeals for the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6):  (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).  A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the

misconduct alleged." See Iqbal, 556 U.S. at 678.  The Third Circuit has specified that in ruling

on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the

complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly

authentic documents if the complainant's claims are based upon these documents."  See Mayer v.

Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White

Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  Additionally, a court may not assume

that a plaintiff can prove facts that the plaintiff has not alleged.  See Associated Gen. Contractors

of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

## III.   DISCUSSION

Defendant does not argue that Plaintiff has inadequately pleaded any of the claims in his

complaint.  He instead asserts that Plaintiff's claims for relief on demand notes executed in 2008

and 2009 are barred by the applicable statutes of limitations.  (Doc. No. 9 at 1.)  Specifically,

Defendant asserts that the demand notes are properly considered negotiable instruments

governed by Pennsylvania's adoption of the Uniform Commercial Code ("UCC") at 13 Pa.

C.S.A. § 3101, et seq. ("PCC"), and that Plaintiff's claims "are time barred by the [PCC]'s dual

statutes of limitations applicable to claims stemming from demand notes: six years after demand

is made, or ten years if no demand has been made."  (Id.) (citing 13 Pa. C.S.A. § 3118(b)).  The

Court will first consider whether the PCC's statutes of limitations apply to the instant action.

Following that, the Court will determine whether there is a basis for tolling the statute of

limitations.

**A.      Applicability of the Statute of Limitations (Counts I, III, IV, and V)**

**1.      Applicable Legal Standard**

In general, the statute of limitations is raised as an affirmative defense in an answer to a complaint.  See Fed. R. Civ. P. 8.  However, within the Third Circuit, a statute of limitations defense may be raised in a motion to dismiss pursuant to Rule 12(b)(6) where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (internal citation omitted).

The PCC provides that: "[u]nless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."  See 13 Pa. C.S.A. § 1103.  However, the Official Comment to the identical provision of the UCC clarifies that:

> while principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise.  In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.

See UCC § 1-103, cmt. 2 (emphasis in original); see also New Jersey Bank N.A. v. Bradford Sec. Ops., Inc., 690 F.2d 339, 346-47 (3d Cir. 1982) (noting that a state's adoption of the UCC displaces common law claims to the extent that "reliance on the common law would thwart the purposes of the Code").

With respect to negotiable instruments, the PCC provides that: (1) a "negotiable instrument" is "an unconditional promise or order to pay a fixed amount of money, with or

without interest or other charges described in the promise or order if it . . . is payable on demand or at a definite time," see 13 Pa. C.S.A. § 3104; (2) a promise or order is "payable on demand" if it states that it is payable on demand or does not state a time of payment, see id. § 3108; and (3) the holder of the instrument is entitled to enforce the instrument, including claims for nonpayment, under the provisions of the PCC, see id. §§ 3301-3312. Under the PCC, for notes payable on demand:

> If demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within six years after the demand.  If no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten years.

See id. § 3118.

### 2.      Arguments of the Parties

Defendant argues that Plaintiff's claims related to the demand notes are barred by the applicable statute of limitations under the PCC.  Specifically, Defendant notes that it is clear from the face of the complaint that: (1) all but one of the demand notes were executed in 2008 and 2009; (2) no payment was ever made on the demand notes; and (3) Plaintiff did not demand payment on the notes until August 27, 2020, more than ten years after their execution.  (Doc. No. 13 at 4.)  Defendant asserts that "the [PCC] displaces common law claims related to negotiable instruments" because the PCC "provides a cause of action for the holder of a negotiable instrument to enforce the instrument and recover the payment due under the instrument."  (Id. at 10.)  Accordingly, Defendant argues that allowing Plaintiff's claims to proceed "would violate the purpose of the [PCC] and enable [Plaintiff] to avoid the [PCC]'s statute of limitations."  (Id. at 11.)

In response, Plaintiff argues that his claims are independently viable because they are common law claims that are not preempted by the PCC.  (Doc. No. 16 at 8.)  Plaintiff further asserts that the Court should apply the common law statute of limitations for promissory notes rather than demand notes to the instant claims and find that the statute of limitations did not begin to run until demand was made.  (Id. at 11.)

3.     **Whether the PCC's Statutes of Limitations Apply to the Instant Action**

Upon review of the parties' arguments and the applicable law, the Court agrees with Defendant that Plaintiff's claims relating to alleged nonpayment of the demand notes (Counts I, III, IV, and V) are barred by the PCC's dual statutes of limitations.  The goal of the UCC is to promote uniformity across state jurisdictions.  See 13 Pa. C.S.A. § 1103 (stating that the Code should be "liberally construed and applied to promote its underlying purposes and policies," e.g., "to make uniform the law among the various jurisdictions").  It is axiomatic that this goal cannot be accomplished if courts resort to common law standards in lieu of applying the statutes of limitations laid out in each state's adoption of the UCC.  See Menichini v. Grant, 995 F.2d 1224, 1231 (3d Cir.1993) (noting that "[v]igorous application of the statute of limitations is a reasonable means of achieving certainty in commercial transactions"); see also Envtl. Equip. & Serv. Co. v. Wachovia Bank, N.A., 741 F. Supp. 2d 705, 715 (E.D. Pa. 2010) (stating that the failure to apply the PCC to displace common law claims "would be to permit non-uniform state law statutes of limitations to govern").

In the present case, the Court's reading of the terms of the relevant demand notes and the PCC confirms that the notes are negotiable instruments under the PCC's provisions.  Therefore, the Court cannot accept Plaintiff's argument that, in essence, he could prevent the common law statute of limitations from running as long as he never made a demand for payment, without

coming into direct conflict with the goals of the UCC to promote clarity and uniformity in commercial transactions. Further, the Court notes that similar claims for breach of contract, i.e., where the contract at issue is a negotiable instrument under the PCC, have been reviewed under the PCC's provisions. See, e.g., New Century Bank v. 1265 Indus. Boulevard, LLC, No. 3287, 2016 WL 5819326, at *4 (Pa. Super. Ct. 2016) (noting that "[p]ay on demand clauses have been statutorily defined by Article 3 of the [PCC] of Negotiable Instruments" and assessing the underlying claim accordingly).

It is also not uncommon for a court, in determining whether the PCC displaces a common law claim, to look at the substance of a complaint rather than how it is styled or characterized. See e.g., Mackin Eng'g Co. v. Am. Exp. Co., No. 10-cv-1041, 2010 WL 9013002, at *3 (W.D. Pa. Oct. 12, 2010), aff'd, 437 F. App'x 100 (3d Cir. 2011) (finding that the PCC displaced a common law breach of contract claim because "[plaintiff] cannot avoid the reality that its claim is based entirely on allegedly misappropriated company checks that were transmitted to and received by defendants in discharge of the debt owed by plaintiff's former controller"); Envtl. Equip. & Serv. Co., 741 F. Supp. 2d at 713-16 (E.D. Pa. 2010) (holding that the PCC displaced common law claims for negligence, breach of contract, and breach of the duty of good faith, and determining that the breach of contract claim was "simply a restatement" of the negligence claim). Therefore, in reviewing Plaintiff's complaint, the demand notes, and the PCC, the Court finds that it would "thwart the purposes of the Code" to not strictly apply the PCC's statute of limitations for negotiable instruments to the instant dispute. See New Jersey Bank, 690 F.2d at 346-47 (noting that a state's adoption of the UCC displaces common law claims to the extent that "reliance on the common law would thwart the purposes of the Code"). The notes at issue are demand notes that were payable on demand. The heart of Plaintiff's claims for breach of

contract (Count I), fraud (Count III), unjust enrichment (Count IV), and declaratory relief (Count V) is the alleged nonpayment of these notes.  The PCC plainly provides that "[i]f no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten years."  See 13 Pa. C.S.A. § 3118(b).  Based on Plaintiff's allegations that: (1) the demand notes at issue were executed in 2008 and 2009; (2) Plaintiff made no demand for payment until August 27, 2020, more than ten years later; and (3) no payment was made on the demand notes during that period, the Court finds that the PCC's ten-year statute of limitations applies to Plaintiff's claims relating to payment of the demand notes.

      **B.**      **Applicability of the Discovery Rule**

      **1.**      **Applicable Legal Standard**

In an attempt to avoid dismissal, Plaintiff seeks to invoke the discovery rule.  "The discovery rule is an equitable exception to the general rule that the statute of limitations begins to run as soon as the underlying cause of action accrues."  See Menichini, 995 F.2d at 1228 n.4. (citing Bohus v. Belhoff, 950 F.2d 919, 924 (3d Cir. 1991)).  Where the discovery rule applies, the statute of limitations begins to run when "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct."  See id.  In causes of action involving commercial transactions under the UCC, the discovery rule does not apply unless the defendant is found to be guilty of fraudulent concealment.  See Bucci v. Wachovia Bank, N.A., 591 F. Supp. 2d 773, at 786-87 (collecting cases).

To be entitled to tolling under a theory of fraudulent concealment, a plaintiff must demonstrate: (1) an affirmative independent act of concealment upon which the plaintiff reasonably relied; or (2) an omission, but only where the defendant had an independent duty to

disclose the relevant information.  See id. at 787 (collecting cases).  The party asserting

fraudulent concealment "has the burden of proving such fraud or concealment, by evidence

which is clear, precise and convincing."  See Molineux v. Reed, 532 A.2d 792, 794 (Pa. 1987).

Further, under Federal Rule of Civil Procedure 9, a party "must state with particularity the

circumstances constituting fraud or mistake."  See Fed. R. Civ. P. 9.

### 2.    Parties' Arguments

Plaintiff argues that the discovery rule applies to toll the statute of limitations in this

action because he alleges that Defendant "concealed the [nonpayment] and other wrongful

conduct for years, thus, the potential claims did not accrue until years later," and "misrepresented

to [Plaintiff] that the [demand notes] had been repaid."  (Doc. No. 16 at 13-14.)  In response,

Defendant argues that the discovery rule does not apply in the UCC context and, even if it did,

Plaintiff failed to plead a fraud claim with sufficient particularity.  (Doc. No. 17 at 3-4.)

Defendant notes that Plaintiff, as the party asserting fraud, bears the burden of pleading facts

sufficient to demonstrate affirmative acts of concealment or, in the alternative, facts that

demonstrate Defendant had an independent obligation to disclose information.  (Id.)  Defendant

argues that Plaintiff has not identified specific representations on which he relied, or any duty to

disclose on Defendant's part.  (Id. at 6.)  In the alternative, Defendant argues that the statute of

limitations should not be tolled because "[Plaintiff] plainly failed to exercise reasonable

diligence in discovering his supposed claims against [Defendant]."  (Id.)

### 3.    Whether the Court Should Toll the Statute of Limitations Under the Discovery Rule

The Court agrees with Defendant that Plaintiff has not alleged specific facts sufficient to

establish that the statute of limitations should be tolled in this case.  Although Plaintiff's

complaint alludes to "misrepresentations" and "concealment," Plaintiff has neither pleaded his

allegations of fraud with the heightened specificity required by Rule 9 nor alleged that Defendant had any affirmative obligation to disclose information regarding payment or nonpayment of the demand notes.  See Mest v. Cabot Corp., 449 F.3d 502, 517 (3d Cir. 2006) (declining to toll the statute of limitations due to fraudulent concealment given the absence of facts indicating an independent duty to disclose on the part of the defendants).  Further, it is clearly established that the fraudulent concealment doctrine does not toll the statute of limitations "where the plaintiff knew or should have known of his claims despite the defendant's misrepresentation or omission."  See id. at 516.  Where "common sense would lead the plaintiff to question a misrepresentation, the plaintiff cannot reasonably rely on that misrepresentation."  See id. Plaintiff does not allege that he exercised due diligence, nor does he allege when or how he discovered any alleged misrepresentation or concealment.  Accordingly, the Court finds that the discovery rule does not apply to toll the statute of limitations in this case and will dismiss Plaintiff's claims related to the demand notes (Counts I, III, IV, and V) as time barred.[4]

IV.     CONCLUSION

       For the foregoing reasons, the Court will grant Defendant's motion to dismiss.  An appropriate Order follows.

_____

[4] In the alternative, Plaintiff invokes the equitable tolling doctrine.  (Doc. No. 16 at 14-15.) However, for equitable tolling to apply, Plaintiff must demonstrate that he "could not, by the exercise of reasonable diligence, have discovered essential information" related to his claims. See Aversano v. Santander Bank, N.A., 828 F. App'x 109, 112 (3d Cir. 2020).  Here, as the Court already noted, Plaintiff has made no allegations related to any exercise of due diligence on his part, nor has he provided facts sufficient to allow the Court to determine that he could not, even upon exercising due diligence, have discovered any issues related to payment or nonpayment of the demand notes.  Accordingly, the Court similarly declines to find that equitable tolling applies to save Plaintiff's claims from dismissal.  Further, in light of the Court's finding that these claims are barred by the statute of limitations as a matter of law, amendment of these claims would be futile.  Therefore, the Court's dismissal of these claims is with prejudice.