**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK E. WOOLLEY,** | : | |
| **Plaintiff** | : | **No. 1:20-cv-01887** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **MICHAEL GROFT,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

In the above-captioned action, stemming from alleged fraud and breach of contract, Plaintiff Mark E. Woolley ("Plaintiff") and Defendant Michael Groft ("Defendant") have filed cross-motions for summary judgment (Doc. Nos. 63, 66) as to Plaintiff's amended complaint (Doc. No. 26).   Plaintiff requests summary judgment on Counts I, II, V, and VI of the amended complaint.   (Doc. No. 66.)   Defendant requests summary judgment on all six (6) counts of the amended complaint.   (Doc. No. 63.)   For the reasons that follow, the Court will deny summary judgment in favor of Plaintiff on Counts I and II and deny summary judgment in favor of Defendant on Counts I, II, III, and IV.   The Court will further dismiss Counts V and VI of the amended complaint, as they are duplicative of Counts I and II.

## I.   BACKGROUND

### A.   Factual Background[1]

Plaintiff is a founder and partner of MGM Enterprises, Inc. ("MGM"), a company that invests in and manages real estate properties.   (Doc. No. 68 ¶¶ 2-4.)   The instant dispute arises

---

[1] The following relevant facts of record are taken from the parties' respective statements of undisputed material facts and the counterstatements thereto.   (Doc. Nos. 64, 68, 73, 75.)   All facts are undisputed unless otherwise noted.   The Court also refers to discovery materials attached as exhibits to the parties' motions.

from events that occurred during and after Defendant Michael Groft ("Defendant")'s tenure as Chief Financial Officer ("CFO") and President of MGM from approximately 2008 through 2017. (Doc. Nos. 68 ¶¶ 6, 16; 64 ¶ 9.)   Defendant was hired by MGM in 2008.   (Doc. No. 68 ¶ 6.) Under the terms of Defendant's employment agreement, Defendant was given the opportunity to invest with MGM without upfront payment.[2]   (Doc. Nos. 64 ¶ 3; 73 ¶ 3.)   Any future property acquisitions by MGM would be purchased through a limited partnership.   (Id.)   "Each such limited partnership" would "have a one (1%) percent general partnership interest and a ninety-nine (99%) percent limited partnership interest," and Defendant would "receive five (5%) of the ninety-nine (99%) percent limited partnership interest."   (Id.)   In exchange for that interest, Plaintiff (or another MGM partner) would pay Defendant's share of the purchase price and Defendant would execute a demand note for the value of his interest in the property at the time of purchase.   (Doc. Nos. 64 ¶¶ 14-15, 17, 21-22; 68 ¶¶ 20-23; 73 ¶ 17.)   Under each demand note, Defendant's repayment obligations are described as follows ("Repayment Provision"):

> Any proceeds from refinancing or the sale of the [specific property] shall not be paid to Limited Partner Michael Groft, his estate or heirs, until such time as Limited Partner[s] . . . their respective heirs and/or assigns, have each received [the face value of the demand note], from sale proceeds, refinance proceeds or payment from Michael Groft.

(Doc. No. 67-1.)   In 2008 and 2009, Defendant executed thirteen (13) demand notes ("Demand Notes") under the terms of the employment agreement, which contained language materially similar to the above.   (Id.)   Nine (9) of the thirteen (13) Demand Notes were between Plaintiff and Defendant only, while the remaining four listed Steven J. Gumenick, another MGM partner,

---

[2] Plaintiff and Defendant do not agree on the exact nature of this investment.   Plaintiff characterizes it as an investment in "MGM's real estate holdings" (Doc. No. 68 ¶ 20), whereas Defendant characterizes it as an "opportunity to receive ownership interests in limited partnerships created to hold real estate" (Doc. No. 75 ¶ 20).   The Court does not view this distinction as material to the present dispute.

as a co-obligee.   (Id.)

In addition to the Demand Notes, on March 13, 2013, Plaintiff and Defendant entered into an agreement pursuant to which Plaintiff sold Defendant a three-percent interest in KGLA Associates, another of MGM's real estate partnerships.   ("KGLA Agreement").   (Doc. Nos. 68 ¶ 62; 75 ¶ 62; 67-2.)   The KGLA Agreement contains the following language setting out the nature of the parties' transaction:

> Woolley hereby agrees to sell a 3% limited partnership interest in KGLA to Groft and Groft desires to purchase same for a total purchase price equal to Two Hundred Sixty Two thousand, Two Hundred ($262,200.00) Dollars (the "Purchase Price").

(Doc. No. 67-2 at 2.)   The next section of the KGLA Agreement, titled "Payment of Purchase Price," contains the same Repayment Provision as the Demand Notes, as does a separate demand note executed for the KGLA Agreement ("KGLA Demand Note") (together with the KGLA Agreement "KGLA Agreement/Demand Note").   (Id. at 2-3, 7-8.)   Additionally, the KGLA Agreement provides an option for Plaintiff to repurchase Defendant's three-percent share should he leave his position at MGM.   (Id. at 3-4.)

As President of MGM, Defendant was responsible for the sale and refinancing of all MGM properties, which generated income for him and the other partners.   (Doc. Nos. 68 ¶¶ 29-31; 75 ¶¶ 29-31.)   The investment properties at issue were periodically refinanced, resulting in disbursements to Defendant, Plaintiff, and other MGM partners.   (Doc. Nos. 68 ¶ 42; 75 ¶ 42.) The property held by the KGLA partnership was refinanced in 2015, and "Groft was in charge of the Transaction[.]"   (Doc. Nos. 68 ¶ 67; 75 ¶ 67.)   Plaintiff alleges, and Defendant disputes, that as a result of this refinancing, Defendant improperly received proceeds equal to his partnership share, despite not having fulfilled his repayment obligation under the KGLA Agreement/Demand Note.   (Doc. Nos. 68 ¶¶ 68-69; 67-3; 75 ¶¶ 68-69.)

The core of the present dispute is over the meaning of the language quoted above. Plaintiff maintains that the Demand Notes and the KGLA Agreement/Demand Note required Defendant to pay Plaintiff back for his portion of the investment, either through cash payments, or through diverting Defendant's share of refinancing or sale proceeds to Plaintiff.   (Doc. No. 68 ¶¶ 27-28.)   Defendant interprets the demand note language as offering two routes of satisfaction, either: (1) Defendant can pay Plaintiff for the face value of each demand note from his own funds; or (2) each note will be satisfied if Plaintiff receives refinancing or sale proceeds from a given property greater than the face value of the demand note on that property.   (Doc. No. 64 ¶¶ 22-24.)   It is undisputed by the parties that Defendant did not pay any of the Demand Notes from his own funds.   (Doc. Nos. 68 ¶¶ 49-50; 75 ¶¶ 49-50.)   Plaintiff alleges that, at the beginning of 2020, three years after Defendant resigned from his position at MGM, the company's "attorneys and officers made Woolley aware that Groft had breached the KGLA Agreement by failing to pay the purchase price and failing to make any effort to return the stock after voluntarily resigning his position."   (Doc. No. 71 at 6.)   On August 27, 2020, Plaintiff sent Defendant a letter demanding immediate payment under the Demand Notes and the KGLA Agreement/Demand Note.   (Doc. Nos. 1-6; 64 ¶ 75.)   Defendant never made payment on the notes as demanded by Plaintiff.   (Doc. No. 67-6 at 22.)

### B.   Procedural Background

On October 13, 2020, Plaintiff initiated the above-captioned action by filing a complaint in this Court.   (Doc. No. 1.)   The complaint alleges claims for: (I) breach of contract as to the Demand Notes; (II) breach of contract as to the KGLA Agreement; (III) fraud; (IV) unjust enrichment; (V) declaratory relief as to the interpretation of the Demand Notes; and (VI) declaratory relief as to the interpretation of the KGLA Agreement.   (Id.)   Defendant filed a

motion to dismiss Counts I, III, IV, and V of the complaint as untimely.   (Doc. No. 9).   In particular, Defendant argued that because the thirteen (13) original Demand Notes had been executed in 2008 or 2009, any attempt to enforce the notes was barred by the statute of limitations set out in Pennsylvania's adoption of the Uniform Commercial Code ("UCC").   See 13 Pa. C.S. § 3118(b); (Doc. No. 13 at 4, 11).   On February 16, 2021, following briefing on Defendant's motion to dismiss (Doc. Nos. 13, 16-17), the Court issued a Memorandum and Order in which it found that: (1) the Demand Notes were negotiable instruments governed by the UCC; (2) Counts I, III, IV, and V of Plaintiff's complaint were time-barred; and (3) neither the discovery rule nor the principles of equitable tolling rendered Plaintiff's claims timely.   (Doc. Nos. 18-19.)   The Court further determined that, in light of its finding that Plaintiff's claims as to the 2008 and 2009 Demand Notes were time-barred as a matter of law, amendment would be futile.   (Doc. No. 18 at 12 n.4.)   Accordingly, the Court dismissed Counts I, III, IV, and V of Plaintiff's complaint with prejudice and directed Defendant to file an answer to Plaintiff's remaining claims within fourteen (14) days.   (Doc. No. 19.)

On March 2, 2021, Defendant filed his answer to Plaintiff's complaint.   (Doc. No. 20.) However, the same day, Plaintiff filed a motion for reconsideration, along with a brief in support, requesting that the Court reconsider its dismissal insofar as it determined that Plaintiff's claims should be dismissed with prejudice.   (Doc. Nos. 21-22.)   The Court granted Plaintiff's motion, determining that Plaintiffs claims should have been dismissed without prejudice and that Plaintiff should be given leave to amend his complaint to plead facts related to fraudulent concealment and the relevant statutes of limitation.   (Doc. Nos. 24-25.)

On April 22, 2021, the Court deemed Plaintiff's amended complaint filed.   (Doc. No. 26.)   It alleges claims for: (I) breach of contract as to the Demand Notes; (II) breach of contract

as to the KGLA Agreement; (III) fraud; (IV) unjust enrichment; (V) declaratory relief as to the interpretation of the Demand Notes; and (VI) declaratory relief as to the interpretation of the KGLA Agreement.   (Id.)   Defendant filed an answer to the amended complaint on May 13, 2021.   (Doc. No. 27.)

On June 6, 2022, following lengthy discovery, both Defendant and Plaintiff filed motions for summary judgment, along with briefs in support and statements of material facts.   (Doc. Nos. 63-68.)   Defendant seeks summary judgment in his favor on all counts of Plaintiff's amended complaint.   (Doc. No. 63.)   Plaintiff seeks partial summary judgment in his favor as to Counts I, II, V, and VI of the amended complaint.   (Doc. No. 66.)   In response to the respective motions, on June 27, 2022, Plaintiff and Defendant each filed a brief in opposition, along with counterstatements of material facts.   (Doc. Nos. 71-74.)   Both parties filed briefs in reply on July 11, 2022.   (Doc. Nos. 76-77.)   Having been fully briefed, the motions for summary judgment are now ripe for disposition.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   See Fed. R. Civ. P. 56(a).   "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.   See id. at 248; Gray v. York

Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).   An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson, 477 U.S. at 248.   When determining whether there is a genuine issue of material fact, the Court must view the facts and draw inferences in favor of the nonmoving party.   See Knopick v. Connelly, 639 F.3d 600, 606 (3d Cir. 2011).   In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.   When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings in order to demonstrate specific material facts that give rise to a genuine issue.   See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."   See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).   However, "[s]ummary judgment is inappropriate when a case will turn on credibility determinations."   See Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995).

## III.   DISCUSSION

### A.   Declaratory Relief (Counts V & VI)

As a preliminary matter, the Court addresses the appropriateness of Plaintiff's claims for declaratory judgment in light of the parallel breach of contract claims contained in the amended complaint (Counts I & II).   "The Declaratory Judgment Act is a procedural vehicle that creates a form of relief; it does not create a cause of action courts may be compelled to enforce."   In re Azek Bldg. Prods., Inc. Mktg. and Sales Prac. Litig., 82 F. Supp. 3d 608, 624-25 (D.N.J. 2015). In the context of declaratory judgments, "a federal court should . . . decline to exercise its

discretionary jurisdiction when doing so would promote judicial economy by avoiding

duplicative and piecemeal litigation."   See State Auto Ins. Cos. v. Summy, 234 F.3d 131, 135

(3d Cir. 2000).   Where a claim for declaratory judgment is duplicative of other claims and

would provide no independent relief, dismissal is warranted.   See, e.g., Butta v. Geico Cas. Co.,

400 F. Supp. 3d 225, 233-34 (E.D. Pa. 2019) (declining to issue a declaratory judgment and

granting partial summary judgment for the defendant "when the claim for breach of contract

would necessarily involve adjudication of the issues implicated in the claim for declaratory

relief"); Winslow v. Progressive Specialty Ins. Co., No. 3:18-cv-01094, 2018 WL 6527323, at

*7-8 (M.D. Pa. Dec. 12, 2018) (same, ruling on a motion to dismiss).

Plaintiff's claims for declaratory judgment as to the parties' rights and responsibilities

under the Demand Notes and the KGLA Agreement are duplicative of Plaintiff's claims for

breach of contract.   Neither Plaintiff's amended complaint nor any of his briefing on summary

judgment attempts to distinguish the breach of contract claims from their associated declaratory

judgment claims.   (Doc. Nos. 26, 67, 71, 76.)   It appears that resolution of Plaintiff's breach of

contract claims will necessarily have the same effect as issuing declaratory judgments as to the

parties' duties under the Demand Notes, and the KGLA Agreement/Demand Note.   Therefore,

the Court will dismiss Plaintiff's declaratory judgment claims (Counts V & VI) as duplicative of

Plaintiff's breach of contract claims (Counts I & II).

### B.   KGLA Agreement/Demand Note (Counts II, III & IV)

Plaintiff and Defendant entered into the KGLA Agreement/Demand Note on March 13,

2013.   (Doc. Nos. 68 ¶ 62; 75 ¶ 62; 67-2.)   Therefore, any action pursuant to these instruments

is timely under the ten-year statute of limitations the Court previously held applicable to the

Demand Notes.   See 13 Pa. C.S. § 3118(b); (Doc. Nos. 18-19).   The Court will therefore

address whether summary judgment is appropriate on the merits of Counts II, III, and IV, insofar as they pertain to the KGLA Agreement/Demand Note.   As explained in detail, <u>infra</u>, the Court will: (1) deny summary judgment to both parties as to whether Defendant breached the KGLA Agreement (Count II); (2) deny Defendant's request for summary judgment on Plaintiff's fraud claim (Count III); and (3) deny Defendant's request for summary judgment on Plaintiff's unjust enrichment claim (Count IV).

### 1. The KGLA Agreement/Demand Note are Negotiable Instruments under the UCC

As a threshold issue, the Court clarifies that, like the Demand Notes, the KGLA Agreement/Demand Note is a "negotiable instrument" governed by the UCC.   Pennsylvania's UCC defines a negotiable instrument as an "unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order" that is "payable on demand or at a definite time."   <u>See</u> 13 Pa. C.S. § 3104(a).   The KGLA Agreement/Demand Note, like the thirteen (13) other Demand Notes, sets forth a specific amount of money owed by Defendant to Plaintiff ($262,200.00) in exchange for a three-percent partnership interest and specifies that it is payable "on demand."   (Doc. No. 67-2 at 7.) Therefore, it fits squarely into the UCC's definition of a "negotiable instrument."

Under the UCC, an "instrument payable on demand" becomes overdue either: (1) "on the day after the day demand for payment is duly made"; (2) "if the instrument is a check, 90 days after its date; or (3) "if the instrument is not a check, when the instrument has been outstanding for a period of time after its date which is unreasonably long under the circumstances of the particular case in light of the nature of the instrument and usage of the trade."   <u>See</u> 13 Pa. C.S. § 3304(a).   On August 27, 2020, Plaintiff sent Defendant a letter demanding immediate payment under the Demand Notes and the KGLA Agreement/Demand Note.   (Doc. Nos. 1-6; 64 ¶ 75.)

Therefore, under Plaintiff's interpretation of the KGLA Agreement/Demand Note, the full value

of that instrument became due on August 28, 2020, and by not paying his obligation to Plaintiff,

Defendant breached his duty under the KGLA Agreement/Demand Note.   See 13 Pa. C.S. §

3304(a)(1).

### 2.      Breach of Contract (Count II)

Plaintiff alleges that Defendant breached the KGLA Agreement/Demand Note and

requests summary judgment as to Count II.   (Doc. No. 67 at 25-26.)   Plaintiff avers that

rescission and restitution are appropriate remedies for Defendant's alleged breach.   (Id.)

Defendant argues that there has been no breach and seeks summary judgment on this claim in his

favor.   (Doc. Nos. 63; 64 ¶¶ 22-24.)

### a.      Arguments of the Parties

The parties do not dispute that the KGLA Agreement/Demand Note is a valid contract.

(Doc. Nos. 67 at 13; 65 at 15.)   Rather, each party offers an alternative reading of Defendant's

obligations under the contract, arguing that as a matter of law his interpretation should prevail.[3]

Plaintiff contends that Defendant breached the terms of the KLGA Agreement/Demand Note by

failing to pay Plaintiff its face value from "either [Defendant's] own cash or with his share of the

proceeds from a sale or refinance of the property."   (Doc. No. 68 ¶¶ 27-28.)   Conversely,

Defendant argues that Plaintiff's interpretation of the contract is incorrect, and that he fulfilled

his contractual obligations by generating refinancing and sale proceeds that exceeded the value

---

[3] As noted, supra, the KGLA Agreement/Demand Note contains a materially identical
Repayment Provision to the other thirteen (13) Demand Notes.   (Doc. No. 67-2 at 2, 7.)
Therefore, the parties' arguments as to the interpretation of that provision are equally applicable
to the KGLA Agreement/Demand Note, regardless of how the parties framed the issues in their
briefing.

of his obligation to Plaintiff.   (Doc. No. 64 ¶¶ 22-24.)   Each party argues that the contract is

unambiguous and that his own reading should prevail under the plain language of the instrument.

(Doc. Nos. 65 at 16-20; 67 at 18-19.)

As to the language of the KGLA Agreement, Plaintiff argues that "[t]he KGLA

Agreement is clear, in Paragraph 2, that the document imposes reciprocal obligations" and that a

breach occurred because "Woolley transferred the interest" while "Groft paid nothing."   (Doc.

No. 67 at 25.)   Therefore, Plaintiff argues, rescission and restitution are warranted.   (Id.)

Defendant does not squarely address this argument in his briefs but insists that, because the

KGLA Agreement/Demand Note contains the same Repayment Provision as the other thirteen

(13) Demand Notes, the same interpretation should apply, leading to the conclusion that he did

not breach the KGLA Agreement/Demand Note.   (Doc. No. 74 at 26-27.)

As to the Repayment Provision, Plaintiff argues that under the series-qualifier canon of

construction, a plain reading supports the conclusion that Defendant was obligated to pay

Plaintiff back for his portion of the investment, either through cash payments or through

diverting Defendant's share of refinancing or sale proceeds to Plaintiff.   (Doc. No. 67 at 18-21.)

In opposition, Defendant argues that Plaintiff's reading of the Repayment Provision is "unnatural

and illogical" because it would require Defendant to repay Plaintiff with refinancing or sale

proceeds that he was not yet entitled to receive.   (Doc. No. 74 at 10.)   Instead, Defendant puts

forward a different "plain reading" of the Repayment Provision using the "last antecedent" canon

and reads the phrase "sale proceeds, refinance proceeds or payment from Michael Groft" so that

"from Michael Groft" modifies only "payment" and not "sale proceeds" or "refinance proceeds."

(Id. 13-14.)   Under this reading, Defendant maintains that he was able to satisfy the note either

by paying the entire value of the note out of pocket, or by paying no money at all and simply

generating refinancing and sale proceeds for Plaintiff equal or greater to the value of the note as a function of his position as CFO and President of MGM.   (Id.)

      **b.**      **Whether Defendant Breached the KGLA Agreement/Demand Note**

Under Pennsylvania law, the elements of breach of contract are "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages."   See Gorski v. Smith, 812 A.2d 683, 692 (Pa. Super. 2002).   For purposes of a breach of contract analysis, "when two or more writings are executed at the same time and involve the same transaction, they should be construed as a whole."   See W. United Life Assurance Co. v. Hayden, 64 F.3d 833, 842 (3d Cir. 1995).   In this case, whether a breach occurred turns on the construction of Defendant's repayment obligations under the KGLA Agreement/Demand Note, construed as one instrument.   See id.

In examining a contract, the Court's purpose "is to interpret the intent of the contracting parties, as they objectively manifest it."   See Sanford Inv. Co. v. Ahlstrom Mach. Holdings, 198 F.3d 415, 421 (3d Cir. 1999).   If "the written terms of the contract . . . can only be read one way, the court will interpret the contract as a matter of law."   See Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994).   To that end, the Court must first decide whether the contract is ambiguous.   See Ahlstrom Mach. Holdings, 198 F.3d at 421.   In making that determination, a court may look to "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." See Hullett, 38 F.3d at 111.

"A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense."   Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986).   An "ambiguity can be patent or latent.   A patent ambiguity is one

that is apparent on the face of the document, and a latent ambiguity is 'created by extrinsic or collateral circumstances.'"   See Patel v. Dhaduk, 839 F. App'x 715, 718 (3d Cir. 2020) (unpublished) (quoting Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004)).   However, "[t]he Third Circuit has made it clear that district courts may only consider certain kinds of extrinsic evidence to establish latent ambiguity in a contract: 'A party may use extrinsic evidence to support its claim of latent ambiguity, but this evidence must show that some specific term or terms in the contract are ambiguous; it cannot simply show that the parties intended something different that was not incorporated into the contract.'"   See TIG Ins. Co. v. Tyco Int'l Ltd., 919 F. Supp. 2d 439, 463 (M.D. Pa. 2013) (quoting Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93 (3d Cir. 2001)).

Although each party states that the KGLA Agreement/Demand is unambiguous, each attributes an entirely different meaning to it.   (Doc. Nos. 65 at 16; 67 at 18.)   Whether the KGLA Agreement/Demand is ambiguous turns on the extent to which both Plaintiff's use of the series-qualifier canon and Defendant's use of the last antecedent canon are availing, because if they are, then the relevant contractual provisions would be amenable to more than one reasonable interpretation.   See (Doc. Nos. 67 at 18-21, 74 at 13-14.)

The Court concludes that both canons are reasonably applicable.   The series-qualifier canon of construction urged by Plaintiff provides that "[u]nder conventional rules of grammar, [w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series."   See Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1169 (2021) (alteration in original) (internal quotation marks omitted).   Thus, "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the

clause be read as applicable to all."   See Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S.

345, 348 (1920).   It is particularly applicable "where it is clear from the document as a whole

that the phrase in question was intended to apply to all of the items that are listed before the

qualifying phrase."   See Penn Psychiatric Ctr., Inc v. United States Liab. Ins. Co., 257 A.3d

1241, 1251 (Pa. Super. 2021) (emphasis added).

Here, based on the framing of the KGLA Agreement/Demand Note as a whole, there is a

reasonable argument that the series-qualifier canon should apply.   This is so because the dispute

is over a negotiable instrument under the UCC: i.e., an "unconditional promise or order to pay a

fixed amount of money."   See 13 Pa. C.S. § 3104(a).   That promise, as reflected by the KGLA

Agreement/Demand Note and the KGLA Demand Note in particular, requires Defendant "Groft

. . . to pay . . . [Plaintiff] Woolley . . . ($262,000.00) Dollars," see (Doc. No. 67-2 at 7), and is

"payable as follows"—from "sale proceeds, refinance proceeds or payment from [Defendant]

Michael Groft," see (id.)   Because "Michael Groft" closes the stipulated list of ways in which

Plaintiff can be repaid for transferring his 3% interest to Defendant, there is a reasonable

argument that "Michael Groft" is as applicable to "payment from" as it is "sale" and "refinance

proceeds."   See (id. at 2-3, 7); see also Facebook, Inc., 141 S. Ct. at 1170 (noting that the

Supreme Court has declined "to apply the [last antecedent] rule where . . . the modifying clause

appears after an integrated list").   This weighs in favor of Plaintiff's interpretation of the

disputed contractual language.

Nevertheless, the last antecedent rule appears equally applicable.   The last antecedent

rule "provides that 'a limiting clause or phrase . . . should ordinarily be read as modifying only

the noun or phrase that it immediately follows.'"   See Lockhart v. United States, 577 U.S. 347,

351 (2016) (quoting Barnhart v. Thomas, 540 U.S. 20, 26 (2003)) (first citing Rule of the Last

Antecedent, Black's Law Dictionary 1532-33 (10th ed. 2014) (noting that "[q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing"); and then citing A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 144 (2012)).   Indeed, "'[i]t is an ordinary rule, not so much of law as of the grammatical construction of the English language, that words of relation prim[a] facie refer to the nearest antecedent.'"   See Edward Beal, Cardinal Rules of Legal Interpretation 69 (3d ed. 1924).

Here, the Repayment Provision of the KGLA Agreement states that "any proceeds from refinancing or sale of KGLA assets shall not be paid to [Defendant] Groft . . . until such time as [Plaintiff Woolley] has received" $262,000.00 "from sale proceeds, refinance proceeds or payment from Groft."   See (Doc. No. 67-2 at 3).   Under the last antecedent rule, "from Groft" would not be extended to "sale" or "refinance proceeds" unless "'the extension is necessary from the context or the spirit of the entire writing.'"   See Lockhart, 577 U.S. at 351.   Defendant's account of the context, which Plaintiff disputes (Doc. No. 75 at 10-11), requires no such extension.   If, as he argues, all of the Demand Notes in the case are to be interpreted the same— that is, in light of the fact that "the Demand Notes merely functioned as a condition precedent to Groft receiving distributions pursuant to the ownership interests he was entitled to under his employment agreement[,] . . . [meaning] Woolley 'gave' Groft 'ownership interests in the limited partnerships as part of Groft's compensation package with MGM, when he was hired, and the Demand Notes served to ensure Groft put in the 'sweat equity' through his work at MGM to earn that compensation" (Doc. No. 74 at 15-16)—it would reasonably follow that Plaintiff's $262,000.00 could be satisfied from either general KGLA refinancing or sale proceeds

or "payment from Groft."[4]  This weighs in favor of Defendant's interpretation of the disputed contractual language.

The above analysis not only makes clear that both parties' interpretations of the KGLA Agreement/Demand Note are availing, but that the context of the contractual language at issue— a key factor for determining which canon of construction applies—is itself disputed. Accordingly, the Court cannot grant either party summary judgment as to Count II.  See Hutchison, 519 A.2d at 390 (explaining that "the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact"); see also Windows v. Erie Ins. Exch., 161 A.3d 953, 957 (Pa. Super. 2017) (explaining that while "courts are responsible for deciding whether, as a matter of law, written contract terms are either clear or ambiguous; it is for the fact[ ]finder to resolve ambiguities and find the parties' intent" (quoting Metzger v. Clifford Realty Corp., 476 A.2d 1, 5 (Pa. Super. 1984) (alteration in original))).

### 3. Fraud (Count III) and Unjust Enrichment (Count IV) as to the KGLA Agreement/Demand Note

Having determined that neither party is entitled to summary judgment on Count II, the Court turns to Plaintiff's claims for Fraud and Unjust Enrichment (respectively, Counts III and IV).  Defendant argues that he is entitled to summary judgment on these counts.  See (Doc. No.

---

[4] Defendant's invocation of the last antecedent canon is also reasonable in light of the general rule that courts are to give effect to each word in a contract.  See United States v. Butler, 297 U.S. 1, 65 (1936) (explaining "[t]hese words cannot be meaningless, else they would not have been used"); A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) (discussing the surplusage canon).  The Court observes that, if "Michael Groft" were as applicable to "payment from" as it is to "sale" and "refinance proceeds"—meaning he were obligated to pay the demand notes from his share of the sale or refinance proceeds—then there is a reasonable argument that "sale" and "refinance proceeds" would effectively mean "payment[s] from Michael Groft" as well, rendering those terms superfluous.  By contrast, using the last antecedent rule would give an independent meaning to each of "sale proceeds," "refinance proceeds," and "payment from Groft."

63).   Plaintiff's partial motion for summary judgment, by contrast, does not extend to these counts.   For the reasons that follow, the Court will deny Defendant's motion as to Plaintiff's claims of fraud and unjust enrichment.

### a.   Application of the Statute of Limitations

As an initial matter, the Court clarifies the implications of the applicable statute of limitations to Counts III and IV of Plaintiff's amended complaint.   Counts III (fraud) and IV (unjust enrichment) of the amended complaint are only arguably time-barred as to the Demand Notes, which fall outside of the ten-year UCC statute of limitations.   See 13 Pa. C.S. § 3118(b). As previously noted, the KGLA Agreement/Demand Note was signed in 2013 and claims pursuant to it are therefore within the statute of limitations.   See 13 Pa. C.S. § 3118(b).   The Court did not have occasion to address this issue previously, as the parties' arguments on Defendant's motion to dismiss as to Counts III and IV did not distinguish between the Demand Notes and the KGLA Agreement/Demand Note.   (Doc. Nos. 13, 16-17.)   However, as repleaded in the amended complaint, it is clear that Plaintiff's claims for fraud and unjust enrichment encompass all the contracts at issue in this lawsuit, not only the Demand Notes. (Doc. No. 26 at 21-23.)   Therefore, Plaintiff's claims for fraud and unjust enrichment, insofar as they relate to the KGLA Agreement/Demand Note, are not barred by the statute of limitations and do not require proof of fraudulent concealment for the Court to reach their merits.   In the following section, the Court addresses the substance of Plaintiff's claims of fraud as to the KGLA Agreement/Demand Note only.[5]

### b.   Fraud (Count III)

---

[5] As the Demand Notes are subject to a dispute over the statute of limitations, the Court addresses Plaintiff's claim of fraud and unjust enrichment as they apply to the Demand Notes, infra, in section C.

Plaintiff alleges that Defendant committed fraud by concealing his non-payment of the Demand Notes and the KGLA Agreement/Demand Note through a variety of misleading financial statements and oral conversations.   (Doc. No. 68 ¶¶ 37-60, 102-05.)   Defendant requests summary judgment on this claim.   (Doc. No. 65.)   He primarily argues that summary judgment is warranted: (1) because he did not breach the contract as a matter of law and therefore cannot have committed fraud; and (2) because Plaintiff points to insufficient facts of record to support a claim of fraud or fraudulent concealment.   See (id. at 20-34).   As noted, Plaintiff does not request summary judgment on this count.

> Common law fraud under Pennsylvania law requires the plaintiff to show:
>
> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

See Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994).   At trial, Plaintiff bears the burden of proving fraud by clear and convincing evidence.   See Moser v. DeSetta, 589 A.2d 679, 682 (Pa. 1991). However, the requirements of summary judgment differ from those of trial: because Defendant is the only moving party on the fraud claim, he has the burden of showing that no reasonable jury applying the "clear and convincing" standard could find in favor of Plaintiff at trial.   See Anderson, 477 U.S. at 254 (1986).   Only then can the Court find that there is no "genuine issue of material fact" as to the validity of Plaintiff's fraud claim.   Id. at 247-48.

As to Defendant's first argument, the Court concludes that he is not entitled to judgment as a matter of law because of the genuine dispute as to whether he breached the KGLA Agreement/Demand Note.   The Court "must have an adequate factual basis for" granting a motion for summary judgment.   See 10A C. Wright, A. Miller, & M. Kane, Federal Practice and

Procedure § 2725 (4th ed. 1983).   Whether Defendant committed fraud to conceal a contractual

breach cannot be resolved at this stage because the very nature of Defendant's obligations under

the contract remain in dispute.   The Court cannot render judgment on the fraud allegations until

the respective rights and obligations of the parties under the contract are decided.   Accordingly,

summary judgment must be denied.   See id.; see, e.g., Petition of Bloomfield S. S. Co., 298 F.

Supp. 1239, 1242 (S.D.N.Y. 1969) (explaining that "summary judgment . . . is always

discretionary, and in cases posing complex issues of fact and unsettled questions of law, sound

judicial administration dictates that the court withhold judgment until the whole factual structure

stands upon a solid foundation of a plenary trial where the proof can be fully developed,

questions answered, issues clearly focused and facts definitively found").

Defendant's second argument, which suggests that the fraud claim fails because Plaintiff

presents no genuine issue of material fact, also fails because it conflates the proofs required for

fraudulent concealment with the elements of fraud.   (Doc. No. 65 at 20-30.)   The briefs contain

no independent arguments regarding the merits of the fraud claim, as distinct from fraudulent

concealment.   (Doc. Nos. 65, 77.)   As a result, Defendant fails to demonstrate the absence of a

genuine issue of material fact as to Plaintiff's fraud claim.   Accordingly, the Court will deny

Defendant's request for summary judgment on Count III as to the KGLA Agreement/Demand

Note.

### c.      Unjust Enrichment (Count IV)

In the amended complaint, Plaintiff alleges that Defendant took proceeds from the

properties subject to the Demand Notes and the KGLA Agreement/Demand Note without first

paying Plaintiff the face value of the notes, and as such, was unjustly enriched.[6]   (Doc. No. 26 ¶¶ 28, 30, 101-09.)   Defendant requests summary judgment on Count IV, arguing that he fulfilled his contractual obligations and was therefore entitled to retain refinancing and sale proceeds from the properties.   (Doc. No. 65 at 15-16.)

The Court cannot grant Defendant's motion for summary judgment as to Count IV. Claims of unjust breach of contract and unjust enrichment, both at issue in this case, generally "must be pleaded alternatively in order to allow recovery under the latter theory" because "recovery may not be had for both[.]"   See Lugo v. Farmers Pride, Inc., 967 A.2d 963, 970 (Pa. Super. 2009).   Here, because the underlying issue of breach as to the KGLA Agreement/Note remains unresolved, and because the issue of contractual breach also bears on the question of whether Defendant was entitled to the proceeds from the properties subject to the Demand Notes and the KGLA Agreement/Demand Note, the Court finds it premature to grant summary judgment.   See Bonham v. Dresser Indus., Inc., 569 F.2d 187, 190 n.1 (3d Cir. 1977) (explaining a "note of caution about a grant of summary judgment in circumstances where the facts are unclear and a fuller development of the facts may serve to clarify the application of the law") (citing Palmer v. Chamberlin, 191 F.2d 532, 540 (5th Cir. 1951); Palmer, 191 F.2d at 540 (stating "[w]here . . . the decision of a question of law by the Court depends upon an inquiry into the surrounding facts and circumstances, the Court should refuse to grant a motion for a

---

[6] The elements of unjust enrichment are:

(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

See Durst v. Milroy Gen. Contracting, 52 A.3d 357, 360 (Pa. 2012) (citations omitted).

summary judgment until the facts and circumstances have been sufficiently developed to enable

the Court to be reasonably certain that it is making a correct determination of the question of

law").

    **C.**    **Demand Notes (Counts I, III & IV)**

    Plaintiff requests summary judgment in his favor on Count I of the amended complaint, a

claim for breach of contract as to the Demand Notes.   (Doc. No. 66.)   In arguing that summary

judgment is warranted at this time, Plaintiff argues that he has presented sufficient evidence of

fraudulent concealment, such that the ten-year statute of limitations typically applicable to

actions to enforce negotiable instruments under the UCC should be tolled.   See 13 Pa. C.S. §

3118(b); (Doc. No. 67 at 23-25).

    Defendant requests summary judgment in his favor on all counts related to the Demand

Notes (Counts I, III & IV).   (Doc. No. 63.)   Defendant asserts that Plaintiff's claims as to the

Demand Notes in Counts I, III, and IV are untimely because they do not fall within the ten-year

statute of limitations.   See 13 Pa. C.S. § 3118(b); (Doc. No. 65 at 20-23).   Plaintiff argues that

the statute of limitations was tolled by the discovery rule, because Defendant fraudulently

concealed his non-payment of the Demand Notes by making affirmative written and oral

representations that the notes had been paid.   (Doc. No. 68 ¶¶ 37-56.)   As to the oral

representations alleged by Plaintiff, Defendant asserted in his deposition testimony that he does

not recall any conversations with Plaintiff about the status of the Demand Notes.   (Doc. Nos. 68

¶ 48; 75 ¶ 48.)   Defendant further contends that the various documents offered as evidence of

fraudulent concealment reflect his contemporaneous understanding that the Demand Notes had

been satisfied when Plaintiff received refinancing or sale proceeds greater than the value of each

note.   (Doc. No. 75 ¶¶ 49-50.)

In Pennsylvania, to toll the statute of limitations on a claim regarding a negotiable instrument under the UCC, the plaintiff must show an act of fraudulent concealment by the defendant that kept the plaintiff from discovering the cause of action until the statute of limitations had lapsed.   See 13 Pa. C.S. § 3118(b); Menchini v. Grant, 995 F.2d 1224, 1230-31 (3d Cir. 1993).   Fraudulent concealment must consist of "an affirmative and independent act of concealment that would divert or mislead the plaintiff from discovering the injury."   See Local No. 252 Annuity Fund v. Janney Montgomery Scott, Inc., 155 F.R.D. 97, 101 (E.D. Pa. 1994). Where a party alleges fraudulent concealment through omission, there must also be a "duty to speak" by the concealing party.   See Bucci v. Wachovia Bank, N.A., 591 F. Supp. 2d 773, 787 (E.D. Pa. 2008).   The statute of limitations cannot be tolled by "lack of knowledge, mistake or misunderstanding."   See Pocono Intern. Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983).   "[A] statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause."   Fine v. Checcio, 870 A.2d 850, 861 (Pa. 2005).   To that end, a plaintiff is required to show that they exercised "reasonable diligence[] to ascertain the fact of a cause of action."   See Pocono Intern. Raceway, 468 A.2d at 471.   "[W]hether a plaintiff has exercised reasonable diligence is generally a factual question reserved for the jury" except in circumstances where "the facts are so clear that reasonable minds cannot differ."   See Mest v. Cabot Corp., 449 F.3d 502, 512 (3d Cir. 2006).

The case before the Court presents a number of disputed issues of material fact impacting the issue of tolling of the statute of limitations and therefore impacting the validity of Plaintiff's claims related to the Demand Notes.   The documentary and testimonial evidence proffered by Plaintiff raises a "genuine issue of material fact" as to whether Defendant represented the status

of the Demand Notes in a manner that rises to the level of fraudulent concealment.   <u>See</u>

<u>Anderson</u>, 477 U.S. at 247-48.   By way of example, much of Plaintiff's proffered evidence to

support fraudulent concealment is in the form of deposition testimony in which Plaintiff recounts

conversations with Defendant about the status of the Demand Notes.   (Doc. No. 67-7 at 20.)

Defendant disputes this testimony.   (Doc. No. 65 at 25-26.)   Therefore, resolving the issue of

fraudulent concealment will necessarily require a credibility determination, a finding that the

Court is not permitted to make in connection with the resolution of a summary judgment motion.

<u>See</u> <u>Horowitz</u>, 57 F.3d at 302 n.1.   Accordingly, the Court will deny summary judgment on

Counts I, III, and IV, insofar as they pertain to the Demand Notes.

## IV.    CONCLUSION

For the foregoing reasons, the Court will: deny Plaintiff's motion for summary judgment

as to Counts I and II and Defendant's motion for summary judgment on Counts I, II, III, and IV.

The Court will further dismiss Counts V and VI of the amended complaint, as they are

duplicative of Counts I and II.   An appropriate Order follows.